UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-61242-BLOOM/Valle

CONSEAL INTERNATIONAL
INCORPORATED,

      Plaintiff,

v.

NEOGEN CORPORATION,

      Defendant.

_____/

## ORDER

    **THIS CAUSE** is before this Court upon Plaintiff ConSeal International Inc.'s ("Plaintiff")

Motion for Leave to Amend Complaint to Add Party Defendant. ECF Nos. [32] & [35] ("Motion").

Defendant Neogen Corporation ("Defendant") filed its Response in Opposition, ECF Nos. [39] &

[43] ("Response"),[1] to which Plaintiff replied, ECF No. [47] ("Reply"). The Court has carefully

reviewed the Motion, the opposing and supporting submissions, all relevant exhibits, the record in

this case, and the applicable law, and is otherwise fully advised. For the reasons set forth below,

Plaintiff's Motion is denied.

## I.  BACKGROUND

    Plaintiff initiated the instant breach of contract action against Defendant on May 16, 2019.

ECF No. [1] ("Complaint"). Plaintiff's Complaint asserts five Counts: Count I – Breach of

---

[1] Plaintiff initially filed a redacted Motion, ECF No. [32], which it later refiled under seal without redactions, ECF No. [35]. Likewise, Defendant filed a redacted version of its Response first, ECF No. [39], an unredacted version of which was later filed under seal, ECF No. [43]. The Court will reference and cite to the sealed and unredacted versions of these briefs, ECF Nos. [35] & [43], throughout the remainder of this Order.

Contract; Count II – Open Account; Count III – Account Stated; Count IV – Promissory Estoppel; and Count V – Unjust Enrichment. *See generally id.*

The facts relevant to the instant Motion are as follows: Plaintiff manufactures, produces, and sells various chemical products used for sanitizing and disinfecting livestock facilities, including a chlorine dioxide product under the tradename "MaxKlor." *Id.* ¶¶ 9-10, 12. Beginning in November 2009, Plaintiff entered into an informal agreement with Preserve, Inc. ("Preserve") where Plaintiff would manufacture and deliver MaxKlor to Preserve for distribution and sale. *Id.* ¶¶ 11-13. In early 2015, Preserve indicated its desire to enter into a more formal agreement where Preserve would be the exclusive seller of MaxKlor products in certain market segments, which Plaintiff agreed to with the condition that Preserve would purchase a minimum amount of MaxKlor annually in exchange for exclusivity. *Id.* ¶ 14. Accordingly, around May 20, 2015, Plaintiff and Preserve entered into a formal, written agreement, ECF No. [1-3] ("License Agreement" or "Agreement"), that governed the manufacturing of MaxKlor products and the exclusive license granted to Preserve to distribute and sell these products. ECF No. [1] ¶¶ 15, 17. The Agreement's initial term was set to expire on December 31, 2019. *Id.* ¶ 16.

In May 2016, Defendant, who markets and sells products in the food and animal safety industry, acquired all of Preserve's stock and assets, including the License Agreement. *Id.* ¶ 21.

> As part of the acquisition, Neogen assumed the Licensed Agreement. Immediately after the acquisition, in May 2016, Neogen began purchasing the MaxKlor products from ConSeal and marketing, distributing and selling those products in accordance with the terms of the License Agreement. Neogen representatives also traveled to meet ConSeal representatives in person to discuss their continued relationship under the License Agreement. The parties have operated continuously and without objection since May 2016 with Neogen as the Licensee under the Agreement. Moreover, the License Agreement provides that "[t]his Agreement shall be binding upon, and shall inure to the benefit of, the parties and their respective Affiliates, <u>successors</u>, permitted assigns . . . ." *License Agreement*, § 13(l) (emphasis added).

*Id.* ¶ 22. Defendant purchased MaxKlor products from Plaintiff until approximately July 2018, when Defendant notified Plaintiff that it was going to discontinue purchasing these products because it had found a cheaper alternative. *Id.* ¶¶ 23-24, 27-28. On or about November 8, 2018, Defendant sent Plaintiff a letter purporting to terminate the License Agreement because it wanted to find a cheaper alternative. *Id.* ¶ 29. Defendant has not purchased any MaxKlor products from Plaintiff since July 2018, and therefore failed to meet its minimum annual purchase requirements. *Id.* ¶ 28.

After being unable to reach a resolution pre-suit, Plaintiff filed this breach of contract action. On July 10, 2019, this Court issued an Order Setting Trial and Pre-trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge, ECF No. [18] ("Initial Scheduling Order"), which set the deadline to file all motions to amend pleadings on September 7, 2019. *Id.* at 1-2. Well after the amendment deadline had passed, the parties moved to extend the trial and pre-trial deadlines on two separate occasions, *see* ECF Nos. [26] & [28], both of which were granted, *see* ECF Nos. [27] & [29]. Finally, on April 27, 2020, after Plaintiff filed the instant Motion, the Court granted the parties' third request to extend the deadlines in this case, set the case for trial on September 14, 2020, and extended the discovery deadline until June 15, 2020, and the dispositive motion deadline until June 22, 2020. ECF No. [46] at 1-2 ("Final Scheduling Order").

In its Answer and Affirmative Defenses to Plaintiff's Complaint, ECF No. [11] ("Answer"), filed on July 9, 2019, Defendant asserted affirmative defenses that Plaintiff's Complaint fails to sufficiently allege that the Agreement was properly assigned to Defendant and this Agreement therefore is not enforceable against Defendant, that Preserve is an active, separate entity that is the only proper defendant in this case, and that Plaintiff failed to name or join Preserve, despite Preserve being an indispensable party and the only other party to the License

Agreement. *Id.* at 23. Plaintiff states that it understood these defenses "to be nothing more than a postured technicality that, according to [Defendant], the assignment was ineffective because [Plaintiff's] consent was somehow inadequate and the subject agreement was not enforceable against [Defendant]." ECF No. [35] at 2; *see also id.* at 7 ("[Plaintiff] understood that [Defendant's] defense raised a technical legal issue of whether the Agreement was effectively assigned to [Defendant], not a factual issue of whether or not [Defendant] had actually purchased MaxKlor at all."). However, Plaintiff explains that it recently learned during discovery that Defendant is not merely contesting Plaintiff's consent to the assignment, but that Preserve had been purchasing MaxKlor products during the entire relevant time period at issue in this case. *Id.* Specifically, on February 26, 2020, Defendant's corporate representative testified at her deposition that "[Defendant] has never sold MaxKlor Products, [Defendant] has never purchased MaxKlor Products, [Defendant] has never received any revenue from the sale of MaxKlor Products and that money paid to [Plaintiff] for MaxKlor products came from Preserve." *Id.* at 9; *see also* ECF No. [35-4] at 72:19-75:19.

On April 9, 2020, upon learning of Defendant's position that Preserve was the only entity that purchased and sold MaxKlor products during the relevant time period, Plaintiff filed the instant Motion seeking the Court's leave to amend its Complaint to add Preserve as a party defendant. *See* ECF No. [35]; *see also* ECF No. [35-18] ("Amended Complaint"). Defendant filed its Response on April 23, 2020, opposing the requested relief because amendment at this stage — after the deadline to amend pleadings has long passed — is both untimely and unduly prejudicial to Defendant and Preserve. *See* ECF No. [43]. Finally, on April 30, 2020, Plaintiff filed its Reply, arguing that Plaintiff acted with diligence in seeking discovery in this case and in moving to amend upon discovering the relevant information after the deadline and that the requested

4

amendment would not unduly prejudice Defendant or Preserve, whose interests are aligned, because the allegations, claims, and issues against both entities are highly similar and intertwined. ECF No. [47].

## II. LEGAL STANDARD

Generally, Rule 15 of the Federal Rules of Civil Procedure governs amendment to pleadings. Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A plaintiff should be afforded the opportunity to test their claim on the merits as long as the underlying facts or circumstances may properly warrant relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "In this circuit, these 'same standards apply when a plaintiff seeks to amend after a judgment of dismissal has been entered by asking the district court to vacate its order of dismissal pursuant to Fed. R. Civ. P. 59(e).'" *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)). In any event, "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman*, 371 U.S. at 182.

Further, the Court of Appeals for the Eleventh Circuit has explained that, "when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2,

1419 (11th Cir. 1998). Federal Rule of Civil Procedure 16 states that requests for leave to amend after the applicable deadline, as set in a court's scheduling order, require a showing of "good cause." Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (quotation marks omitted); *see also Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1366-67 (11th Cir. 2007) (holding that "where a party files an untimely motion to amend, [courts] must first determine whether the party complied with Rule 16(b)'s good cause requirement," before considering whether "justice so requires" allowing amendment). Furthermore, a lack of diligence "is not limited to 'a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes' but also includes 'a plaintiff's failure to seek the information it needs to determine whether an amendment is in order.'" *De Varona v. Disc. Auto Parts, LLC*, 285 F.R.D. 671, 673 (S.D. Fla. 2012) (quoting *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 n.3 (11th Cir. 2009)). If the party seeking relief "was not diligent, the [good cause] inquiry should end." *Sosa*, 133 F.3d at 1418 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

When a motion for leave to amend a pleading is filed after the deadline set in a court's scheduling order, the court employs a two-step analysis. *Sosa*, 133 F.3d at 1419. First, the movant must demonstrate good cause under Rule 16(b). Good cause exists when "evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline passed." *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007) (citation omitted). "[E]ven if the opposing party would not be prejudiced by the modification of a scheduling order, good cause is not shown if the amendment could have been timely made." *Id.* In this regard, a court's "evaluation of good cause [under Rule 16] is more

stringent than its inquiry into the propriety of amendment under the more liberal Rule 15." *Id.* (citing *Sosa*, 133 F.3d at 1418). Accordingly, "the likelihood of obtaining permission to amend diminishes drastically after the court enters a scheduling order with deadlines for amendments that have expired." *Id.*

Courts consider three factors in assessing diligence: (1) whether the movant failed to ascertain facts prior to filing the pleading or failed to acquire information during the discovery period; (2) whether the information supporting the proposed amendment was available to the movant; and (3) whether the movant delayed in requesting leave to amend even after acquiring the information. *See Sosa*, 133 F.3d at 1419. Moreover, a plaintiff "must establish good cause for their delay in seeking to amend the pleadings after the Court's deadline for amendment before the Court may consider whether to grant leave to amend under Rule 15." *Remington v. Newbridge Sec. Corp.*, No. 13-cv-60384, 2014 WL 505153, at *12 (S.D. Fla. Feb. 7, 2014).

## III. DISCUSSION

Plaintiff requests leave to amend its Complaint to add Preserve as party defendant to this action based on what it contends is newly obtained information indicating that Preserve — not the Defendant — continued to purchase MaxKlor products from May 2016 until the alleged breach. As an initial matter, Plaintiff maintains that the evidence obtained during the course of discovery in this case clearly indicates that the License Agreement was properly assigned to Defendant, and that Defendant, not Preserve, proceeded to purchase and sell MaxKlor products pursuant to this Agreement after its acquisition of Preserve in May 2016. Nevertheless, in an abundance of caution, Plaintiff now seeks to add Preserve as a defendant based on the recently obtained information that Preserve continued to purchase MaxKlor products under the License Agreement and that

Defendant had never bought or sold such products. Specifically, Plaintiff notes that Defendant asserted the following affirmative defenses in its Answer,:

> 1. [Plaintiff] has failed, in whole or in part, to state a claim upon which relief may be granted. Specifically, [Defendant] is not a party to the License Agreement upon which all of Plaintiff's claims are based, and the Complaint contains no allegations that the License Agreement was properly assigned to [Defendant] in the manner that the License Agreement itself requires. The License Agreement is thus not enforceable against [Defendant]. Moreover, Preserve remains an active, separate entity from [Defendant], and as such is the only proper defendant in this case. . . .
> 2. [Plaintiff] has failed to name or join Preserve, Inc., which is an indispensable party to the present action because it is the only counter-party to the License Agreement at issue.

*Id.* at 23.

Plaintiff states that it understood these defenses "to be nothing more than a postured technicality that, according to [Defendant], the assignment was ineffective because [Plaintiff's] consent was somehow inadequate and the subject agreement was not enforceable against [Defendant]." ECF No. [35] at 2; *see also id.* at 7 ("[Plaintiff] understood that [Defendant's] defense raised a technical legal issue of whether the Agreement was effectively assigned to [Defendant], not a factual issue of whether or not [Defendant] had actually purchased MaxKlor at all."). However, Plaintiff explains that it recently learned during discovery that Defendant is not merely contesting that Plaintiff consented to the assignment, but that Preserve had been purchasing MaxKlor products during the entire relevant time period at issue in this case. *Id.* Specifically, on February 26, 2020, Defendant's corporate representative testified at her deposition that "[Defendant] has never sold MaxKlor Products, [Defendant] has never purchased MaxKlor Products, [Defendant] has never received any revenue from the sale of MaxKlor Products and that money paid to [Plaintiff] for MaxKlor products came from Preserve." *Id.* at 9; *see also* ECF No. [35-4] at 72:19-75:19.

Case No. 19-cv-61242-BLOOM/Valle

Moreover Plaintiff defends its decision not to name Preserve as a defendant from the outset in this case by arguing:

> [Plaintiff] did not have any knowledge or understanding that Preserve still claimed to conduct business. [Plaintiff] understood that it had been dealing only with [Defendant] since [Defendant] acquired Preserve in May 2016. [Plaintiff's] understanding was that there was no option for Preserve to continue purchasing MaxKlor after [Defendant] acquired Preserve. The only question was whether [Plaintiff] and [Defendant] would operate under the original License Agreement or enter into a revised agreement, and [Plaintiff] and [Defendant] agreed to operate under the original License Agreement. Moreover, [Plaintiff] also understood that Preserve's interests in the License Agreement had been assigned to [Defendant] and that [Plaintiff] had been selling to [Defendant] and not Preserve for years. Thus, there was no reason to include Preserve as a Defendant and, in fact, [Plaintiff] believed it would have been bad faith to do so. Indeed, as set forth in detail above, all of the evidence actually demonstrated that Preserve should not be a party.

ECF No. [35] at 6 (citations omitted).

Defendant opposes the requested relief and contends that amendment at this stage is both untimely and unduly prejudicial to Defendant and Preserve. In particular, Defendant's Response argues that Plaintiff cannot establish the requisite good cause or diligence under Federal Rule of Civil Procedure 16 that would justify granting leave to amend after the amendment deadline has passed and that Plaintiff has not provided the Court with any compelling reason as to why it could not have timely added Preserve as a defendant in this case. Moreover, Defendant asserts that Plaintiff's undue delay in seeking to amend its Complaint on the eve of the completion of discovery would be highly prejudicial to both Defendant and Preserve because (1) Defendant would be forced to participate in additional discovery and would have to endure delaying the disposition of this matter, especially when Defendant intends to file a dispositive motion shortly to resolve all current claims, and (2) Preserve would be deprived of its ability to meaningfully participate in aspects of the case, such as mediation, and would be forced to engage in discovery and prepare its defenses in an unreasonably small amount of time.

Finally, in its Reply, Plaintiff argues that its knowledge of Preserve's involvement in agreeing to the License Agreement from the outset of this case alone is not a sufficient basis to deny the relief requested because that knowledge did not support adding Preserve as a defendant until recently. Moreover, Plaintiff alleges that it did not delay in filing the instant Motion, but rather it did so soon after it discovered the information with regard to Preserve, and permitting amendment here would not unduly prejudice either Defendant or Preserve because their interests are completely aligned and the allegations, claims, and defenses are identical for both entities. Finally, Plaintiff maintains that judicial economy supports adding Preserve as a defendant in this case because the allegations against Preserve and Defendant are highly intertwined and thus should be fully adjudicated together.

Here, because Plaintiff's Motion was filed after the September 7, 2019, deadline to amend pleadings in the Court's Initial Scheduling Order, ECF No. [18], Plaintiff "must first demonstrate good cause under Rule 16(b) before [the Court] will consider whether amendment is proper under Rule 15(a)." *Sosa*,133 F.3d at 1419. "Lack of diligence in pursuing a claim is sufficient to show lack of good cause." *Donley v. City of Morrow*, 601 F. App'x 805, 811 (11th Cir. 2015). "In short, diligence is the key to satisfying the good cause requirement." *Taylor v. Genesee & Wy., Inc.*, No. 3:13-cv-1250-J-39MCR, 2015 WL 12838173, at *2 (M.D. Fla. Jan. 6, 2015) (quoting *De Varona*, 285 F.R.D. at 672-73). Further, "[t]he lack of diligence that precludes a finding of good cause is not limited to a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes," but can also "include a plaintiff's failure to seek the information it needs to determine whether an amendment is in order." *S. Grouts & Mortars, Inc.*, 575 F.3d at 1241; *cf. Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008) (explaining that a plaintiff did not establish good cause by stating that it did not know about

the jurisdictional defects of its claims until notified of those defects by the district court after the deadline for amending pleadings). "The burden of establishing good cause [and] diligence rests squarely on the party seeking relief from the scheduling order." *Northstar Marine, Inc. v. Huffman*, No. 13-0037-WS-C, 2014 WL 3720537, *3 (S.D. Ala. July 28, 2014); *see also TIC Park Ctr., 9 LLC v. Cabot*, No. 16-24569-CIV, 2018 WL 4828435, at *4 (S.D. Fla. Aug. 28, 2018).

Upon review, the Court concludes that Plaintiff has not met the good cause standard because it cannot show that the deadline for amendment "could not be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1419. "A plaintiff's request to amend his complaint based on facts already known to him before he filed suit indicates a lack of diligence in prosecuting the suit." *Quinn v. Deutsche Bank Nat'l Tr. Co.*, 625 F. App'x 937, 940 (11th Cir. 2015) (citing *Sosa*, 133 F.3d at 1419); *see also Aligned Bayshore Holdings, LLC v. Westchester Surplus Lines Ins. Co.*, No. 18-21692-CIV, 2019 WL 6001001, at *2 (S.D. Fla. Nov. 14, 2019) ("A party lacks diligence when, prior to the deadline to amend, he had full knowledge of the information with which he later sought to amend his pleading." (citing *Donley*, 601 F. App'x at 811)).

In particular here, the purportedly new information that Plaintiff relies on in support of its request to amend — namely, facts regarding Preserve's continued purchase of MaxKlor products under the License Agreement after the May 2016 acquisition that support adding Preserve as a party defendant — was available to Plaintiff at the time it filed the original Complaint in this case. *See Sanchez v. H & R Maint., L.C.*, 294 F.R.D. 677, 679 (S.D. Fla. 2013) ("Plaintiff was aware that the parties whom she now seeks to add were possible parties prior to filing her original complaint, or at the latest, one month prior to the amendment deadline."). Indeed, the Complaint alleges numerous facts concerning Preserve and the License Agreement that strongly suggest that

Plaintiff either was or should have been on notice that Preserve was a likely party to this action. *See* ECF No. [1] ¶¶ 11-26, 39, 45; *see also Harris v. Reverse Mortg. Sols. Inc.*, 800 F. App'x 708, 711-12 (11th Cir. 2020) ("Yet the supposedly new items in [the plaintiff's] motion and fourth amended complaint . . . were already in the third amended complaint. It is apparent from the third amended complaint that [the plaintiff] already knew all the relevant facts. There is simply no reason [the plaintiff] could not have added [the third-party] as a defendant in the third amended complaint."); *Johnson*, 975 F.2d at 609 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." (citations omitted)); *Taylor*, 2015 WL 12838173, at *2 (finding that no good cause exists where "the proposed amended Complaint appear[ed] to rely on the same information alleged in Plaintiff's [original] Complaint" (citing *Pittinos v. Provident Life & Accident Ins. Co.*, No. 08-0662-KD-C, 2009 WL 4255747, at *5 n.6 (S.D. Ala. Nov. 22, 2009) (denying leave to add claims under ERISA and noting the proposed amended complaint relied on the same facts alleged in Plaintiff's prior complaint)). Importantly, Plaintiff should have been on notice that Preserve was a likely defendant in this action based on documents within its own possession — namely, the exhibit attached to Plaintiff's original Complaint, ECF No. [1-4] at 2 (Defendant's letter to Plaintiff terminating the License Agreement), refers to Preserve as the Licensee under the Agreement. *See id.* at 2 ("Please consider this letter formal notification to Terminate the License Agreement between *Preserve International, Inc.* and [Plaintiff] . . . . [Plaintiff's] resistance to work with *Preserve* in adapting to market pricing of the product given alternative chemistries and pricing pressures in the Market Segments, we are simply unable to sell the License Products into the Territory anymore. . . . *Preserve* shall cease and terminate all use of the Trademarks and Trade Names upon Termination of the Agreement. *Preserve* will release all its rights and will not make any claims on [Plaintiff]." (emphasis added)).

Likewise, the additional allegations about Preserve in Plaintiff's Amended Complaint are premised on the same substantive facts as those alleged in the original Complaint, *compare* ECF No. [1] ¶¶ 11-22, *with* ECF No. [35-18] ¶¶ 13-24, and only include new allegations with regard to Preserve as an alternative or in addition to the allegations already asserted regarding Defendant, *compare* ECF No. [1] ¶¶ 23-35, 39-41, 45-46, 49-54, 56-60, 62-66 (alleging relevant facts against only "Neogen"), *with* ECF No. [35-18] ¶¶ 26-38, 42-45, 48-49, 52-57, 59-63, 65-69 (modifying allegations to reflect "Neogen (and/or Preserve)" or "Defendants"). Indeed, the only allegation in Plaintiff's Amended Complaint that alleges additional information beyond what is alleged in the original Complaint is the following:

> [Defendant] contends that it never assumed the License Agreement and/or Preserve's obligations under the License Agreement, that the License Agreement was not assigned from Preserve to [Defendant], that [Defendant] did not begin purchasing MaxKlor products from [Plaintiff], that Preserve continued to purchase MaxKlor products from [Plaintiff] after [Defendant's] acquisition of Preserve, and that Preserve continued to operate pursuant to the License Agreement with [Plaintiff]. . . . [R]egardless of whether [Defendant's] contentions are accurate or not, it is undisputed that either [Defendant] or Preserve purchased MaxKlor Products from [Plaintiff] pursuant to the License Agreement after [Defendant] acquired Preserve. Additionally, [Defendant] remains the sole owner of Preserve.

ECF No. [35-18] ¶ 25. Plaintiff's Motion fails to provide the Court with any newly discovered facts about Preserve's involvement in the relevant transactions to justify its inability to timely seek leave to amend. *See Nat'l Union Fire Ins. Co. of Pittsburgh PA v. SPX Flow US, LLC*, No. 18-cv-80332, 2018 WL 6169630, at *2 (S.D. Fla. Nov. 26, 2018) ("The Court is unpersuaded that Defendant has demonstrated good cause to modify the Court's Scheduling Order and afford the relief requested. Defendant has failed to explain any connection between the manufacturing documents it was delayed in receiving and its ability to raise the economic loss rule as an affirmative defense."). Rather, the information that Plaintiff relies upon in support of its request to amend relates to Plaintiff's present, clearer understanding of the defenses that Defendant raises in

Case No. 19-cv-61242-BLOOM/Valle

response to the claims asserted, rather than to whether Preserve continued to exist as an ongoing entity and continued to perform under the terms of the License Agreement by purchasing MaxKlor products from Plaintiff after May 2016. *See Alexsam, Inc. v. Wildcard Sys., Inc.*, No. 15-cv-61736, 2016 WL 11528956, at *2 (S.D. Fla. May 31, 2016) ("The Court does not agree that Defendants' termination defense . . . was insufficient to put Plaintiff on notice prior to the amendment deadline. Further, Plaintiff itself acknowledges . . . that the 'evidence upon which Defendants rely is not new.' Indeed, it appears that Defendants' Motion relies primarily on facts and documents available prior to the filing of Plaintiff's Complaint and which 'should have been in Alexsam's possession,' . . . . Because Defendants asserted their termination defense in their initial pleadings and well before the deadline to amend set forth in the Court's Scheduling Order, Plaintiff has failed to demonstrate that the amendment could not have been timely made." (citations omitted)).

Ultimately, Plaintiff's "argument that the amended claims arose from newly discovered evidence ignores the fact that the underlying substance of the allegations in the proposed amended complaint have not changed." *Estate of Duckett ex rel. Calvert v. Cable News Network LLLP*, No. 5:06-cv-444-OC-10GRJ, 2010 WL 2025220, at *3 (M.D. Fla. Apr. 19, 2010). "Because Callwood had 'the information supporting the proposed amendment to the complaint . . . before she filed suit,' she has not demonstrated good cause to modify the scheduling order deadline . . . ." *Callwood v. Jones*, 727 F. App'x 552, 557-58 (11th Cir. 2018) (footnote omitted); *see also Balthazar Mgmt. v. Beale St. Blues Co., Inc.*, No. 17-cv-81214, 2018 WL 8221674, at *2 (S.D. Fla. Oct. 12, 2018) ("Thus, while Plaintiff may have recently obtained evidence to support or ultimately prove a claim . . . , Plaintiff has admittedly been in possession of the facts and allegations necessary to assert such a claim since January 12, 2018, when Plaintiff filed its Amended Complaint. The new

record evidence supporting Plaintiff's claim . . . . were known and alleged by Plaintiff well before the time for amendment.").

In addition, Plaintiff's argument that it was unaware of Preserve's ongoing business operations and maintained corporate structure after its acquisition is equally unavailing, given that "corporate status is a matter of public record, and this information [is] available to a diligent litigant." *Arianas v. LVNV Funding LLC*, 307 F.R.D. 615, 618 (M.D. Fla. 2015) (citing *Sosa*, 133 F.3d at 1419 (this factor weighs against leave to amend when "information supporting the proposed amendment . . . was available to [the plaintiff] even before she filed suit.")). "To be sure, a reasonable inquiry would have revealed the falsity of Plaintiff's" beliefs about Preserve's allegedly ceased business operations. *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1253 (M.D. Fla. 2000); *see also Yormak v. Yormak*, No. 2:14-cv-33-FtM-29CM, 2015 WL 1810980, at *1 (M.D. Fla. Mar. 26, 2015) ("Plaintiff has failed to demonstrate, however, why he failed to ascertain the facts necessary to support these claims prior to the deadline for amending the pleadings. . . . Certainly with some diligence, this information could have been discovered sooner; and there is no explanation from Plaintiff as to why discovery as to this issue was not conducted earlier in the case."). Critically, Plaintiff fails to provide the Court with any basis for its stated belief that Preserve was no longer an active entity or that it had ceased to conduct business after the acquisition and, absent more, the Court will not excuse Plaintiff's failure to diligently investigate Preserve's continued corporate existence and ongoing business operations. *See S. Grouts & Mortars, Inc.*, 575 F.3d at 1241 n.3 ("That lack of diligence can include a plaintiff's failure to seek the information it needs to determine whether an amendment is in order."); *see also Pugh v. Kobelco Const. Mach. Am., LLC*, 413 F. App'x 134, 136 (11th Cir. 2011) ("Pugh failed to show the required level of diligence in pursuing his claim. . . . Pugh contends that he lacked notice

of the party defect because the defendants did not specifically challenge the estate's capacity to bring suit in their answers. However, the proposed amendment was based on facts that were, or should have been, within his own knowledge."); *Arianas*, 307 F.R.D. at 618 ("It is apparent that Plaintiff failed to ascertain or appreciate the involvement of Resurgent and Alegis in a diligent fashion. . . . Plaintiff was therefore on notice of Resurgent's involvement before the case was filed. . . . [That] Plaintiff did nothing to ascertain LVNV's corporate structure before filing the complaint or early in discovery[] [is] likewise indicative of a lack of diligence." (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008)).[2]

---

[2] *See also Morrissey v. ASD Shared Servs., LLC*, 626 F. App'x 946, 954 (11th Cir. 2015) ("The record supports the court's conclusion that Morrissey lacked diligence in pursuing her FMLA claims. The basic facts on which her FMLA claims were based were known to her from the outset of this lawsuit. . . . She asserts that she learned key new information during a deposition earlier in July 2013, but this information relates to the Employers' corporate structure, not to the basis for her FMLA claims. Moreover, it is clear that Morrissey knew of the basis for her FMLA claims at least as early as March 2013 . . . The fact that she learned of facts relevant to those claims later in discovery does not show that they could not have been raised earlier."); *Valpak Direct Mktg. Sys., Inc. v. Maschino*, 349 F. App'x 368, 370-71 (11th Cir. 2009) ("The facts underlying the proposed amendment were actually known or could have been discovered with the exercise of due diligence in advance of the amendment deadline."); *Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695, 700 (11th Cir. 2005) (concluding that there was no good cause where the defendant "not only knew of the potential overlap in the claims . . . before the deadline for amendment of pleadings expired, [the defendant] knew of and had documentation to support the facts underlying its newly-proposed affirmative defense before litigation even began. [Thus, the defendant] failed, in every respect, to show diligence in presenting its affirmative defense . . . ."); *Stevenson v. Cyprus Amax Minerals Co.*, No. 6:17-cv-417-Orl-40DCI, 2018 WL 8608274, at *3 (M.D. Fla. June 8, 2018) ("Plaintiff does not identify a single document that was produced . . . that she relied upon in her Motion to demonstrate a reasonable basis for the recovery of punitive damages. Even assuming Plaintiff relied upon information that was produced . . . , she does not explain how that information was crucial in demonstrating a reasonable basis for the recovery of punitive damages. Moreover, it appears that much of the information Plaintiff relied on in her Motion . . . was either known to her or in her possession long before she sought leave to amend the Complaint. Thus, in addition to Plaintiff's lack of diligence, Plaintiff has failed to demonstrate that the documents disclosed . . . were even necessary to demonstrate a reasonable basis for the recovery of punitive damages." (citations omitted)); *Rogers v. Hartford Life & Acc. Ins. Co.*, No. 12-0019-WS-B, 2012 WL 2395194, at *2 (S.D. Ala. June 22, 2012) ("[I]n plaintiff's words, '[t]he allegations added to the Amended Complaint are supported by the exhibits that were already filed with the original complaint.' If plaintiff already possessed the information she needed to support the amended complaint at the time of filing the initial complaint in December 2011, then it will be inordinately difficult for her to establish that, despite being diligent, she could not amend her pleading by the May 8, 2012 scheduling order deadline."); *Estate of Duckett ex rel. Calvert*, 2010 WL 2025220, at *3 ("[C]ontrary to Plaintiffs assertion that this testimony introduced new facts, none of the testimony presented factual information that Plaintiffs did not — or could not — have [had] access to prior to the depositions had Plaintiffs exercised due diligence.").

Case No. 19-cv-61242-BLOOM/Valle

Likewise, the Court is also unpersuaded by Plaintiff's argument that its mistaken understanding as to the scope of Defendant's affirmative defenses justify permitting amendment under the circumstances of the instant action. As noted above, on July 9, 2019 — almost two months before the Court's deadline to amend the pleadings — Defendant filed its Answer asserting in part the following affirmative defenses:

> 1. [Plaintiff] has failed, in whole or in part, to state a claim upon which relief may be granted. Specifically, [Defendant] is not a party to the License Agreement upon which all of Plaintiff's claims are based, and the Complaint contains no allegations that the License Agreement was properly assigned to [Defendant] in the manner that the License Agreement itself requires. The License Agreement is thus not enforceable against [Defendant]. *Moreover, Preserve remains an active, separate entity from* [*Defendant*]*, and as such is the only proper defendant in this case*. . . .
> 2. [Plaintiff] has failed to name or join Preserve, Inc., which is an indispensable party to the present action *because it is the only counter-party to the License Agreement at issue*.

*Id.* at 23 (emphasis added).

Despite these affirmative defenses, Plaintiff maintains that good cause for the requested amendment exists because "all known and available evidence up until recent information disclosed by [Defendant], including the course of dealing between the parties, supported the fact that [Defendant], not Preserve, purchased and sold MaxKlor Products and that Preserve should not be a party in this action." ECF No. [35] at 15. As such, Plaintiff asserts that it lacked any knowledge of the fact that Defendant claims to have never purchased MaxKlor products until the deposition of Defendant's corporate representative, which occurred after the amendment deadline. *Id.* The Court is unpersuaded by Plaintiff's argument.

Defendant's affirmative defenses should have put Plaintiff on notice that there was an issue as to the proper defendant sufficient to prompt Plaintiff to immediately investigate the issue. Moreover, Plaintiff's "complaint that [Defendant's] answers were not nuanced enough to allow it to discern" that Defendant disputed having ever purchased MaxKlor products from Plaintiff, "at

17

least in part, misses the mark. The onus is not on [Defendant] to outline any claims [Plaintiff] might have. Rather, the burden rests with [Plaintiff] to prosecute its own case diligently." *Julian Depot Miami, LLC v. Home Depot U.S.A., Inc.*, No. 17-22475-CIV, 2018 WL 3404133, at *4 (S.D. Fla. July 12, 2018). "The information was not undiscovered because [Defendant] was actively concealing it; the information was not discovered because [Plaintiff] didn't actively seek it." *Id.*[3]

Yet, even if Plaintiff first learned of Preserve's ongoing existence as an active entity conducting business at the time Defendant filed its Answer, it nonetheless failed to seek leave to amend until almost seven months after the deadline to amend had passed. This delay contradicts any argument that Plaintiff acted diligently in seeking to add Preserve as a party defendant in this case. *See Ameritox, Ltd. v. Aegis Servs. Corp.*, No. 07-80498-CIV, 2008 WL 2705435, at *2 (S.D. Fla. July 9, 2008) ("After careful review, the Court finds that Plaintiffs have not made a showing of good cause to amend the complaint at this late date, i.e., nearly five months after the deadline

---

[3] *See also Alexsam, Inc.*, 2016 WL 11528956, at *2; *Sanchez*, 294 F.R.D. at 680 ("[A]s demonstrated in the record, Plaintiff had in her possession all information needed to seek this very amendment, yet delayed in so moving. Plaintiff was on notice that Defendants contested enterprise jurisdiction on June 4, 2013 when Defendants filed their Answer. . . . Even if a jurisdictional challenge was not raised, . . . Plaintiff nevertheless had reason to suspect that Bristol NMB Partners Limited and Bristol NMB, LLC were necessary parties to be added to this action based upon her own theory of recovery. Following a review of the record and the parties' arguments, it is clear that with appropriate diligence, Plaintiff could have sought amendment of the Amended Complaint prior to the deadline . . . ." (citations omitted)); *Girard v. Aztec RV Resort, Inc.*, No. 10-62298-CIV, 2011 WL 7962612, at *5 (S.D. Fla. Oct. 4, 2011) ("Plaintiff had at least six months between when he knew or should have known of the issues relating to Kobe and Aztec Management and when amendments were due, but he conducted no discovery at all regarding this issue during this time. Indeed, counsel for Plaintiff knew that Aztec Resort denied employing Plaintiff in December of 2010 and had in his possession W-2 forms, paycheck stubs, and other documents tending to suggest that Aztec Management and Kobe were proper defendants in January 2011. Plaintiff, nonetheless, waited six months before seeking leave to amend his Complaint."); *Plate v. Pinellas Cty.*, No. 8:18-cv-2534-T-36CPT, 2020 WL 428948, at *5 (M.D. Fla. Jan. 28, 2020) ("Here, Plaintiff was not diligent in seeking to add the Property Appraiser as a defendant. Plaintiff knew from her own records when she filed the original Complaint that she was employed by the Property Appraiser, and knew in November 2018 that the County contended it was not the proper defendant. Plaintiff's motion to substitute the Property Appraiser for the County was not made until approximately eight months after the County's assertion." (citation omitted)), *reconsideration denied*, No. 8:18-cv-2534-T-36CPT, 2020 WL 1332148 (M.D. Fla. Mar. 23, 2020).

set forth in the scheduling order. The evidence to which Plaintiffs point in support of their amendment should have been known to Plaintiffs prior to the deadline for amendment of pleadings, or at the very least earlier than…the date they filed the instant motion."); *Holman v. Lee Mem'l Health Sys.*, No. 2:18-cv-76-FtM-38MRM, 2019 WL 5874135, at \*5 (M.D. Fla. July 24, 2019) ("Plaintiffs' [] reasons for failing to seek leave to amend before the court-ordered deadline expired are woefully inadequate to support a finding of good cause or excusable neglect. It is indisputable that the delay here was entirely within Plaintiffs' control. Plaintiffs[] [] effectively admit[] that the facts underlying the proposed amendment were actually known or could have been discovered with the exercise of due diligence in advance of the court-ordered deadline for filing motions to amend the pleadings." (citation omitted)). "A lack of diligence compels a finding that Plaintiff has not demonstrated good cause for the relief [it] seeks." *Arianas*, 307 F.R.D. at 620. As such, the Court concludes that Plaintiff's Motion should be denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Leave to Amend Complaint to Add Party Defendant, **ECF Nos. [32] & [35]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 14, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record