UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-61242-BLOOM/Valle

CONSEAL INTERNATIONAL
INCORPORATED,

    Plaintiff,

v.

NEOGEN CORPORATION,

    Defendant.
_____/

## ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

**THIS CAUSE** is before the Court upon Defendant Neogen Corporation's ("Defendant") Motion for Judgment on the Pleadings, ECF No. [54] ("Motion"). Plaintiff ConSeal International Inc. ("Plaintiff") filed its Response in Opposition, ECF No. [61] ("Response"), to which Defendant replied, ECF No. [65] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case, and the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is denied.

### I. BACKGROUND

Plaintiff initiated the instant breach of contract action against Defendant on May 16, 2019. ECF No. [1] ("Complaint"). The Complaint asserts five Counts: Count I – Breach of Contract; Count II – Open Account; Count III – Account Stated; Count IV – Promissory Estoppel; and Count V – Unjust Enrichment. *See generally id.*

The Complaint alleges the following general facts: Plaintiff manufactures, produces, and sells various chemical products used for sanitizing and disinfecting livestock facilities, including a chlorine dioxide product under the tradename "MaxKlor." *Id.* ¶¶ 9-10, 12. Beginning in

November 2009, Plaintiff entered into an informal agreement with Preserve, Inc. ("Preserve") where Plaintiff would manufacture and deliver MaxKlor to Preserve for distribution and sale. *Id.* ¶¶ 11-13. In early 2015, Preserve indicated its desire to enter into a more formal agreement where Preserve would be the exclusive seller of MaxKlor Products in certain market segments, which Plaintiff agreed to with the condition that Preserve would purchase a minimum amount of MaxKlor Products annually in exchange for this exclusivity. *Id.* ¶ 14. Accordingly, around May 20, 2015, Plaintiff and Preserve entered into a formal, written agreement, ECF No. [1-3] ("License Agreement" or "Agreement"), that governed the manufacturing of MaxKlor Products and the exclusive license granted to Preserve to distribute and sell these products. ECF No. [1] ¶¶ 15, 17. The Agreement's initial term was set to expire on December 31, 2019. *Id.* ¶ 16.

In May 2016, Defendant, who markets and sells products in the food and animal safety industry, acquired all of Preserve's stock and assets, including the License Agreement. *Id.* ¶ 21.

> As part of the acquisition, Neogen assumed the Licensed Agreement. Immediately after the acquisition, in May 2016, Neogen began purchasing the MaxKlor products from ConSeal and marketing, distributing and selling those products in accordance with the terms of the License Agreement. Neogen representatives also traveled to meet ConSeal representatives in person to discuss their continued relationship under the License Agreement. The parties have operated continuously and without objection since May 2016 with Neogen as the Licensee under the Agreement. Moreover, the License Agreement provides that "[t]his Agreement shall be binding upon, and shall inure to the benefit of, the parties and their respective Affiliates, <u>successors</u>, permitted assigns . . . ." *License Agreement*, § 13(l) (emphasis added).

*Id.* ¶ 22. Defendant purchased MaxKlor Products from Plaintiff until approximately July 2018, when Defendant notified Plaintiff that it was going to discontinue purchasing these products because it had found a cheaper alternative. *Id.* ¶¶ 23-24, 27-28. On or about November 8, 2018, Defendant sent Plaintiff a letter purporting to terminate the License Agreement because it wanted to find a cheaper alternative. *Id.* ¶ 29; ECF No. [1-4]. Defendant has not purchased any MaxKlor

Products from Plaintiff since July 2018, and therefore failed to meet its minimum annual purchase requirements. ECF No. [1] ¶ 28.

On May 22, 2020, Defendant filed the instant Motion pursuant to Federal Rule of Civil Procedure 12(c) requesting that this Court enter judgment on the pleadings in its favor in this case because the claims asserted in Plaintiff's Complaint fail as a matter of law without the need for any further factual development. ECF No. [54]. On June 15, 2020, Plaintiff filed its Response arguing that the allegations and inferences in the Complaint are sufficient to withstand judgment on the pleadings. ECF No. [61]. Further, on June 22, 2020, Defendant filed its Reply in support of its Motion. ECF No. [65].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) states that: "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); *see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014); *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1303 (11th Cir. 2005); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002). "A motion for judgment on the pleadings admits the plaintiff's factual allegations and impels the district court to reach a legal conclusion based on those facts." *Gachette v. Axis Surplus Ins. Co.*, No. 19-cv-23680, 2020 WL 2850587, at *1 (S.D. Fla. Apr. 1, 2020) (quoting *Dozier v. Prof'l Found. for Heath Care, Inc.*, 944 F.2d 814, 816 (11th Cir. 1991)).

"Judgment on the pleadings is appropriate only when a party 'fails to offer any pertinent defense,' not when one defense out of many is challenged." *Pete Vicari Gen. Contractor LLC v.*

*Ohio Cas. Ins. Co.*, No. 17-23733-CIV, 2018 WL 6308695, at *1 (S.D. Fla. Sept. 27, 2018) (quoting *Vann v. Inst. of Nuclear Power Operations, Inc.*, No. 1:09-cv-1169-CC-LTW, 2010 WL 11601718, at *2 (N.D. Ga. July 15, 2010)). Indeed, "federal courts are unwilling to grant a judgment under Rule 12(c) unless it is clear that the merits of the controversy can be fairly and fully decided in this summary manner." *Id.* (internal quotation marks omitted). However, "[i]f it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint, the district court should dismiss the complaint." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (citing *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)); *cf. United States v. Khan*, No. 3:17-cv-965-J-PDB, 2018 WL 6308678, at *1 (M.D. Fla. Sept. 26, 2018) ("A court must deny a motion for judgment on the pleadings if a 'comparison of the averments in the competing pleadings reveals a material dispute of fact.'" (quoting *Perez*, 774 F.3d at 1335)).

In rendering judgment, a court may consider the substance of the pleadings and any judicially noticed facts. *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010); *see also Melendez v. Bank of Am. Corp.*, No. 17-cv-60542, 2018 WL 1092546, at *1 (S.D. Fla. Feb. 2, 2018) ("The Court may consider all of the pleadings, including the complaint, answer, counterclaim, and answer to the counterclaim." (citing *Fla. Evergreen Foliage v. E.I. DuPont de Nemours & Co.*, 165 F. Supp. 2d 1345, 1350 (S.D. Fla. 2001))). "Pleadings include the complaint and answer. Written instruments that are exhibits to a pleading are considered a part of the pleading." *Pyure Brands, LLC v. Nascent Health Sci. LLC*, No. 1:18-cv-23357, 2019 WL 7945226, at *2 (S.D. Fla. Mar. 4, 2019) (citing Fed. R. Civ. P. 7(a); Fed. R. Civ. P. 10(c)). "A court may consider documents attached to the complaint or incorporated by reference without converting the motion into a motion for summary judgment if the documents

are: (1) central to the complaint, and (2) the documents' authenticity is not in dispute." *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014) (citing *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005)). "In particular, the Court may 'take judicial notice of and consider documents which are public records.'" *Id.* (citing *Day*, 400 F.3d at 1275-76). Moreover, where a movant relies on or sets forth allegations "were not presented or contained in the pleadings, including new exhibits, the Court cannot consider them without converting the motion into a motion for summary judgment." *Bernath v. Seavey*, No. 2:15-cv-358-FtM-99CM, 2015 WL 13805064, at *1 (M.D. Fla. Sept. 29, 2015).

"A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011). "In determining whether a party is entitled to judgment on the pleadings, [courts] accept as true all material facts alleged in the non-moving party's pleading, and [] view those facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335 (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

In its Motion, Defendant argues that judgment on the pleadings is warranted on each of the five counts asserted in Plaintiff's Complaint because the facts alleged do not provide any basis for recovery. Plaintiff, on the other hand, takes the contrary position and argues that the facts alleged in the Complaint are sufficient to support each asserted basis for relief. The Court will address each count of the Complaint.

### A. Count I – Breach of Contract

First, Defendant argues that Plaintiff's Complaint as currently pled does not state a viable claim for breach of contract because Defendant was not a party to the License Agreement and therefore cannot be held liable under the Agreement. Moreover, Defendant maintains that the Complaint fails to allege or even raise a plausible inference that its stock acquisition of Preserve somehow affected the contractual obligations between Plaintiff and Preserve under the License Agreement, that Preserve assigned the Agreement to Defendant with Defendant's consent, that a novation occurred, or that any other plausible contractual theory exists under which Plaintiff can impose liability upon Defendant pursuant to the Agreement. Plaintiff responds that the Complaint clearly and adequately alleges a viable claim for breach of contract against Defendant based on Defendant's express or implied assumption of contractual obligations, assent by performance, and/or estoppel. In particular, Plaintiff details at length the factual allegations in the Complaint regarding Defendant's assumption and operation of the benefits and obligations of the License Agreement after its acquisition of Preserve and Defendant's course of conduct throughout their business transactions, which indicated Defendant's full assumption of the Agreement.

"The cornerstone of a breach of contract action is the existence of a contract." *Mana Internet Sols., Inc. v. Internet Billing Co., LLC*, No. 06-cv-61515, 2007 WL 1455973, at *2 (S.D.

Fla. May 16, 2007) (citing *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999)). Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck*, 175 F.3d at 914 (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)); *see also Ultimate Fitness Grp., LLC v. Anderson*, No. 18-cv-60981, 2019 WL 8810367, at *3 (S.D. Fla. Mar. 13, 2019).

Generally, "[i]t is axiomatic that a party may not be held liable for a breach of contract if they were not a party to the contract or otherwise agreed to accept its terms." *Mana Internet Sols., Inc.*, 2007 WL 1455973, at *2; *see also Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1073 (11th Cir. 2003) ("[g]enerally, a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms"). Nevertheless, "[a] contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract." *Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So. 2d 500, 503 (Fla. 4th DCA 2003) (quoting *Integrated Health Services of Green Briar, Inc. v. Lopez-Silvero*, 827 So. 2d 338, 339 (Fla. 3d DCA 2002)). "A contract may be binding on a party despite the absence of a party's signature. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties." *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1228 (S.D. Fla. 2009) (quoting *Gateway Cable T.V., Inc. v. Vikoa Construction Corp.*, 253 So. 2d 461, 463 (Fla. 1st DCA 1971)); *see also Fenelus*, 853 So. 2d at 503 (party assented to the contract by performing under the contract).

Thus,

> while it is true that non-signatories are generally not bound by contracts, "'traditional principles of state law' may allow 'a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third party beneficiary theories, waiver and estoppel.'" *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166 (11th Cir. 2011) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). Specifically,

> assumption and equitable estoppel apply here to prevent [Defendants] from performing under and reaping the benefits of the Franchise Agreement for [] years, and then repudiating the post-expiration obligations on the basis that [they] did not sign the Franchise Agreement.

*Cajun Glob. LLC v. Swati Enters., Inc.*, 283 F. Supp. 3d 1325, 1330 (N.D. Ga. 2017) (citing *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316 (11th Cir. 2001) (holding that a non-signatory was bound by a contractual arbitration clause because even though he did not sign the contract with the arbitration provision, the non-signatory did sign a "Takeover Agreement" which "clearly reveals [his] intent to 'step in the shoes' of [the predecessor]"); *A.L. Williams & Assoc., Inc. v. McMahon*, 697 F. Supp. 488, 494 (N.D. Ga. 1988) (finding that "a party cannot have it both ways; it cannot rely on the contract when it works to its advantage and then repute it when it works to its disadvantage."); *Quail Cruises Ship Mgmt. Ltd. v. Agencia De Viagens Cvc Tur Limitada*, No. 09-23248-CIV, 2010 WL 1524313, at *4 (S.D. Fla. Apr. 14, 2010) (noting that equitable estoppel prevents a party from benefiting "from the terms of a contract while simultaneously avoiding its burdens.")); *see also Interim Healthcare, Inc. v. Interim Healthcare of Se. La., Inc.*, No. 19-cv-62412, 2020 WL 3078531, at *12 (S.D. Fla. June 10, 2020).

Defendant argues that Plaintiff's breach of contract claim cannot succeed because there is no binding contract between Plaintiff and Defendant. Defendant was not a signatory to the License Agreement and never assumed the rights and obligations in the Agreement upon its acquisition of Preserve. However, the following allegations in the Complaint, which the Court must take as true where well pled, support Plaintiff's position that Defendant expressly or impliedly assumed the Agreement:

> As a part of its acquisition of Preserve in 2016, Defendant assumed the License Agreement and immediately began acting pursuant to that Agreement by purchasing MaxKlor Products to market, sell, and distribute across the market

8

regions specified in the Agreement. ECF No. [1] ¶¶ 21-22. Defendant's representatives also met with Plaintiff's representatives in person to discuss their ongoing relationship under the License Agreement, and the parties have ultimately operated continuously under the Agreement without objection since May 2016. *Id.* ¶ 22. Thus, "[Defendant] assumed the License Agreement in or about the spring of 2016 when it acquired all of the stock and assets of [Preserve], including the License Agreement." *Id.* ¶ 39.

If these allegations, and the reasonable inferences drawn in Plaintiff's favor, are proven, they raise a plausible right to relief. The Complaint sufficiently alleges the existence of a contractual agreement between Plaintiff and Defendant through Defendant's assumption of the obligations and rights under the License Agreement. *See Fenelus*, 853 So. 2d at 503 ("[a] contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract"); *see also Sierra Equity Grp., Inc.*, 650 F. Supp. 2d at 1228.

Moreover, the Complaint alleges sufficient facts to support the second element of a breach of contract claim by asserting that Defendant's failure to make the minimum purchase requirements owed under the Agreement and its inproper attempt to terminate the Agreement constituted material breaches. ECF No. [1] ¶¶ 23-33, 40. Lastly, the Complaint sufficiently alleges the element of damages that Plaintiff suffered as a direct result of Defendant's breach—namely, Plaintiff incurred raw material and packaging cost increases for years during its relationship with Defendant without raising Defendant's costs; it suffered additional damages due to Defendant's breach of the License Agreement, such as costs to cancel shipments of unnecessary materials due to Neogen's failure to purchase; it refrained from selling MaxKlor Products to third parties during the duration of the Agreement; and it suffered damages in the total amount of $1,720,181.34 due

to Defendant's refusal to meet the minimum purchase requirements under the Agreement. *Id.* ¶¶ 14, 26, 32-35, 41. Thus, the Complaint sufficiently alleges the damages element of Plaintiff's breach of contract claim.

These allegations, if proven, present facts and raise plausible inferences regarding Defendant's assumption of and subsequent operation under the Agreement after its acquisition of Preserve in 2016. Moreover, the exhibits attached to the Complaint, when construed in the light most favorable to Plaintiff, sufficiently raise plausible inferences that Defendant fully assumed the obligations and benefits of the Agreement and thus can be held liable under the Agreement. *See* ECF No. [1-4] (letter of termination of License Agreement sent on Defendant's letterhead by Defendant's employees, referring to the May 20, 2015 Agreement between Preserve and Plaintiff and stating that, "[*a*]*s the Licensee*, *we* are simply unable to continue in this Agreement . . . ." (emphasis added)); ECF No. [1-5] (invoice billed to Defendant for a purchase order of MaxKlor Products, products which were otherwise subject to the exclusivity agreement between Plaintiff and Preserve).[1] Upon review of all the allegations in the Complaint and the relevant attachments, the Court concludes that there are still significant disputes of material fact in this case regarding whether Plaintiff can impose liability on Defendant under the terms of the License Agreement due to Defendant's assumption of the Agreement and subsequent course of conduct pursuant to the Agreement. Thus, Defendant's Motion fails to establish that Plaintiff cannot prove any set of facts

---

[1] Plaintiff also attaches to its Response a letter sent by Defendant after the Preserve acquisition to Plaintiff seeking Plaintiff's consent for assignment and transfer of the License Agreement to Defendant, ECF No. [61-2]. Further, although this correspondence is central to Plaintiff's claims in this case and although Defendant does not dispute its contents, Defendant nonetheless opposes the Court's consideration of the attached exhibit in resolving the instant motion. *See* ECF No. [65] at 6 & n.4. In an abundance of caution, and because the Court's disposition of the instant Motion is the same regardless of whether this correspondence is considered, it will refrain from utilizing Plaintiff's attached exhibit..

that would allow it to prevail on its breach of contract claim. Defendant is not entitled to judgment on the pleadings as to Count I of the Complaint.

### B. Count II – Open Account

Next, Defendant argues that the Complaint does not allege any factual basis to support Plaintiff's claim of open account because Plaintiff did not produce any MaxKlor Products for Defendant or deliver any such products to Defendant without receiving payment. Further, Defendant contends that the only basis for imposing liability on this claim would be pursuant to the License Agreement, which cannot serve as the basis for an open account claim. Plaintiff responds that its open account claim is not premised upon the delivery of MaxKlor Products to Defendant, but rather on the delivery of the exclusive rights to market, distribute, and sell these products in exchange for monetary obligations that Defendant has failed to pay in exchange for the exclusivity Plaintiff provided. Additionally, Plaintiff rightfully points out that its open account claim is pled in the alternative to the breach of contract claim and thus is not subject to dismissal on that ground.

"An open account is 'defined as an unsettled debt arising from items of work and labor, goods sold and delivered, with the expectation of further transactions subject to future settlement and adjustment.'" *Law Offices of David J. Stern, P.A. v. Bank of Am. Corp.*, No. 11-21349-CIV, 2012 WL 112935, at *4 (S.D. Fla. Jan. 12, 2012) (quoting *Robert W. Gottfried, Inc. v. Cole*, 454 So. 2d 695, 696 (Fla. 4th DCA 1984)). "A claim for open account has also been described as 'an unsettled claim or demand by one person against another, based on a transaction creating a debtor and creditor relation between the parties.'" *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, No. 09-cv-61436, 2010 WL 1531489, at *10 (S.D. Fla. Apr. 16, 2010) (quoting *Cherokee Oil Co. v. Union Oil Co.*, 706 F. Supp. 826, 830 (M.D. Fla. 1989)). "Moreover, an open account 'should not include

express contracts or other obligations that have been reduced to writing.'" *Morse, LLC v. United Wisconsin Life Ins. Co.*, 356 F. Supp. 2d 1296, 1299 (S.D. Fla. 2005) (quoting *H & H Design Builders, Inc. v. Travelers' Indem. Co.*, 639 So. 2d 697, 700 (Fla. 5th DCA 1994) ("In commercial transactions, an 'open account' should refer to an unsettled debt, arising from items of work or labor, goods sold and other open transactions not reduced to writing, the sole record of which is usually the account books of the owner of the demand.")).

At the outset, the Court rejects Defendant's argument that it is entitled to judgment on the pleadings because Plaintiff's open account claim is improperly based on the written License Agreement. Count II is clearly and explicitly pled in the alternative to the breach of contract claim and is not premised upon the written Agreement, but rather upon a theory of liability in the absence of any clear written agreement governing the parties' relationship. *See* ECF No. [1] ¶ 44; *see also Allstate Ins. Co. v. James*, 779 F.2d 1536, 1541 (11th Cir. 1986) ("Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency." (citing Fed. R. Civ. P. 8(e)(2))); *cf. H & H Design Builders, Inc.*, 639 So. 2d at 700 ("An obligation does not become an 'open account' simply because the amount due under a contract requires calculation.").[2]

Upon review of the allegations in the Complaint in support of the open account claim, the Court concludes that Plaintiff adequately states a claim that there is an unsettled debt owed for the exclusivity rights Plaintiff provided to Defendant, which allowed it to be the exclusive marketer, distributor, and seller of MaxKlor Products, and for which Plaintiff has not received the agreed-upon payment. ECF No. [1] ¶¶ 45-46, 19, 31; ECF No. [1-5]. These allegations, taken as true and construed in Plaintiff's favor, sufficiently allege facts that could plausibly entitle Plaintiff to relief

---

[2] The Court reaches the same conclusion about the propriety of the alternative theories of recovery asserted in the Complaint in response to Defendant's argument that Plaintiff's account stated claim is also improperly premised upon a written agreement. *See* ECF No. [1] ¶ 48 (pleading the account stated claim in the alternative to the breach of contract claim).

on its open account claim. As such, Defendant is not entitled to judgment as a matter of law on Count II.

### C. Count III – Account Stated

In a similar vein, Defendant asserts that Plaintiff's Complaint fails to allege a viable account stated cause of action because the alleged "debt" owed is not for any products actually delivered, but rather for the difference between the amount of MaxKlor Products that Defendant actually ordered and the amount that Plaintiff believes should have been ordered. Plaintiff's Response details the allegations set forth in the Complaint in support of its account stated claim, and again draws a distinction between Defendant's arguments regarding the lack of delivery of MaxKlor Products, which Plainitiff does not allege as a basis for its claim, and Plaintiff's position that its claim is based instead on the exclusivity it provided to Defendant.

"An 'account stated' is defined as an agreement between persons who have had previous transactions, fixing the amount due in respect to such transactions and promising payment." *Nants v. Fed. Deposit Ins. Co.*, 864 F. Supp. 1211, 1219 (S.D. Fla. 1994); *see also Elof Hansson Paper & Bd., Inc. v. Caldera*, No. 11-cv-20495, 2011 WL 13115846, at *5 (S.D. Fla. Dec. 8, 2011). "An account stated comes into being when a creditor periodically bills a debtor for a certain amount, which amount is not objected to within a reasonable time." *Morse, LLC*, 356 F. Supp. 2d at 1300 (quoting *Dudas v. Dade County*, 385 So. 2d 1144 (Fla. 3d DCA 1980)); *see also Robert C. Malt & Co. v. Kelly Tractor Co.*, 518 So. 2d 991, 992 (Fla. 4th DCA 1988). "[F]or an account stated to exist, there must be agreement that a certain balance is correct and due, and an express or implicit promise to pay that balance." *S. Motor Co. of Dade Cty. v. Accountable Constr. Co.*, 707 So. 2d 909, 912 (Fla. 3d DCA 1998). "Although the plaintiff must show that, at the time of stating the account, there had been previous dealings and transactions with the defendant, it is not necessary

to 'show the books of original entries from which the account is made up since the very object in rendering, stating, and settling accounts is to avoid the necessity of making such proof." *Nants*, 864 F. Supp. at 1220 (quoting 1 Fla. Jur. 2d Accounts and Accounting § 14); *see also Law Offices of David J. Stern, P.A.*, 2012 WL 112935, at *4.

Thus, "an account stated generally arises from the rendition of a statement of transactions between the parties with a failure on the part of the party whom the account was rendered to object within a reasonable time or an express acquiescence in the account rendered." *Nants*, 864 F. Supp. at 1219. "A plaintiff may prove a prima facie case for account stated by proffering evidence that the account was rendered under circumstances which raise a presumption of assent." *Idearc Media Corp. v. Premier Limousine, LLC*, No. 8:08-cv-1695-T-30MAP, 2009 WL 482293, at *3 (M.D. Fla. Feb. 25, 2009) (citing *Nants*, 864 F. Supp. at 1219-20). "The practice of periodic billings for certain amounts in the regular course of business, where no objection to the amount of the bill is made within a reasonable time, may raise such a presumption." *Id.* (citing *Nants*, 864 F. Supp. at 1219-20); *see also First Union Discount Brokerage Services, Inc. v. Milos*, 997 F.2d 835, 841 (11th Cir. 1993). "[T]he presumption of correctness which attaches in an account stated stems from the statements themselves." *See Nants*, 864 F. Supp. at 1221; *see also Idearc Media Corp.*, 2009 WL 482293, at *3.

Similar to the two claims already discussed above, Plaintiff's Complaint sufficiently alleges facts and raises reasonable inferences that support the viability of its accounts stated claim. Moreover, when viewed in light of Defendant's arguments and allegations, the facts alleged and the inferences drawn from the allegations demonstrate the existence of significant disputes of material fact. With regard to the specific allegations presented, the Complaint alleges that Defendant expressly or impliedly promised to pay Plaintiff for the exclusivity rights on MaxKlor

Products in exchange for Defendant's consent to honor certain minimum purchase amounts;[3] the exclusivity rights provided were part of the parties' ongoing transactions together; Plaintiff provided Defendant with an invoice of the amount owed for the agreed minimum purchase requirements, which Defendant did not object to within a reasonable period of time; and Defendant failed to pay the amount due on the invoice, thus creating a debtor-creditor relationship between the parties. ECF No. [1] ¶¶ 49-53; ECF No. [1-5]. These allegations, if proven, raise a viable claim for relief for the account stated claim. As such, Defendant's Motion is denied as to Count III.

### D. Count IV – Promissory Estoppel

In addition, Defendant argues that it is entitled to judgment on the pleadings on Plaintiff's prosmissory estoppel claim because the Complaint fails to plausibly allege any promise Defendant made to Plaintiff to satisfy any miminum purchase requirements, it fails to establish how Plaintiff reasonably relied on any such promise to its detriment, given that Defendant did not order these amounts of MaxKlor Products and Plaintiff therefore did not produce excess MaxKlor Products to its detriment, and it contains no factual allegations as to why enforcing this alleged promise is necessary to avoid injustice. Further, Defendant states that, because the alleged promise at issue is based upon a written contractual agreement, Plaintiff's promissory estoppel claim is precluded in its entirety.

> A cause of action for promissory estoppel contains three elements: that the plaintiff detrimentally relied on the defendant's promise, that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance by the plaintiff, and that injustice can only be avoided by enforcement of the promise. *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st DCA 1999). . . . "Such injustice may be found where the promisor reasonably should have expected that his affirmative

---

[3] Just as the Court was able to draw a reasonable inference when addressing Plaintiff's breach of contract claim that Defendant assumed the obligations of the License Agreement based on the allegations detailing Defendant's conduct and the exhibits attached to the Complaint, the Court can similarly draw a reasonable inference here that Defendant expressly or impliedly assented to these minimum purchase requirements in exchange for exclusivity during the course of the parties' business dealings together.

15

representations would induce the promisee into action or forbearance, and where the promisee shows that such reliance was to his detriment." [*U.S. Security Ins. Co. v. Shivbaran*, 827 So. 2d 1090, 1092 (Fla. 3d DCA 2002) (quoting *Emanuel v. U.S. Fidelity & Guaranty Co.*, 583 So. 2d 1092, 1092 (Fla. 3d DCA 1991))].

*Morse, LLC*, 356 F. Supp. 2d at 1300.

"The doctrine of promissory estoppel 'is unavailable when there is a written contract between the parties covering the disputed promises.'" *Hartel v. Unity Recovery Ctr., Inc.*, No. 16-80471-CIV, 2017 WL 1291952, at *4 (S.D. Fla. Jan. 26, 2017) (quoting *Univ. of Miami v. Intuitive Surgical, Inc.*, 353 F. Supp. 2d 1230, 1236 (S.D. Fla. 2005)). Under Florida law, "where a complaint shows on its face that there exists an adequate remedy at law, there is no jurisdiction in equity." *McNorton v. Pan Am. Bank of Orlando, N.A.*, 387 So. 2d 393, 399 (Fla. 5th DCA 1980). "However, this principle does not apply to promissory estoppel. 'It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails. Until an express contract is proven, a motion to dismiss a claim for promissory estoppel . . . on these grounds is premature.'" *Schoenborn v. Man Diesel N. Am., Inc.*, No. 09-60544-CIV, 2009 WL 1812089, at *1 (S.D. Fla. June 25, 2009) (quoting *Mobil Oil Corp. v. Dade Cty. Esoil Mgmt. Co., Inc.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997)); *see also Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 385 F. Supp. 3d 1289, 1293 (S.D. Fla. 2019); *Sader v. Padron*, No. 1:18-cv-22891, 2018 WL 7287159, at *5 n.1 (S.D. Fla. Dec. 19, 2018). "The rationale underlying this prohibition is that [p]romissory estoppel is not a legal doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple *in the event it fails to prove breach of contract*." *Univ. of Miami v. Intuitive Surgical, Inc.*, 353 F. Supp. 2d 1230, 1236 (S.D. Fla. 2005) (emphasis added) (citing *Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So. 2d 924, 928 (Fla. 4th DCA 2002)).

Again, the Court begins by addressing Defendant's argument that Plaintiff's promissory estoppel claim must fail because it is premised upon a contractual agreement. In addition to appropriately pleading this claim in the alternative, *see* ECF No. [1] ¶ 56, the Court is unpersuaded by Defendant's argument that this equitable claim is precluded by the existence of an adequate remedy at law based on the License Agreement. Curiously, Defendant devotes the majority of its Motion on its steadfast claim that no valid contract exists, yet then asserts that the existence of this very same contract precludes equitable relief. As is apparent from the pleadings, the existence of an express written contract between the parties is a fact that is still strongly disputed at this stage. Yet, "[u]ntil an express contract is proven, a motion to dismiss a claim for promissory estoppel . . . on these grounds is premature." *Schoenborn*, 2009 WL 1812089, at *1 (citation omitted); *see also Elof Hansson Paper & Bd., Inc.*, 2011 WL 13115846, at *5; *Zarrella v. Pacific Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) (holding that unjust enrichment may be pled if one or more parties dispute the existence of an express contract).[4] Thus, Plaintiff's equitable claims are not precluded based on the Complaint's alternative theory of recovery at law for breach of contract.

The Complaint sets forth specific facts in support of Plaintiff's claim for promissory estoppel: Defendant made a clear and unambiguous promise to meet minimum purchase

---

[4] The same is true of Defendant's final challenge to Plaintiff's unjust enrichment claim based on the existence of a written agreement. *See Schoenborn*, 2009 WL 1812089, at *1; *Mobil Oil Corp.*, 982 F. Supp. at 880; *see also Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1331-32 (S.D. Fla. 2010) ("A plaintiff is not prevented from asserting an equitable cause of action merely because the plaintiff also *alleged* an adequate legal remedy. Rather, it is the existence of a legal remedy that bars an equitable cause of action. *Cf. Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ('It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there *is* an adequate legal remedy.' (emphasis added)). A mere allegation cannot bar Plaintiff's claim.")). "Indeed, nothing prevents Plaintiff from pursuing alternative claims of breach of contract and unjust enrichment in separate counts." *Intercoastal Realty, Inc.*, 706 F. Supp. 2d at 1332 (citing *JI-EE Industry Co., Ltd. v. Paragon Metals, Inc.*, No. 09-81590-CIV, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010)).

requirements in exchange for the exclusive right to market, advertise, sell, and distribute MaxKlor Products; Plaintiff acted in reliance on this promise to its detriment by not selling MaxKlor Products to third parties, and this reliance was a reasonable and foreseeable consequence of Defendant's promise to purchase certain miminum amounts in exchange for exclusivity; and Plaintiff suffered damages due to its detrimental reliance on Defendant's promise and Defendant's failure to comply with its promise by incurring, among other things, costs to cancel shipments of excess unnecessary materials due to Defendant's failure to meet the minimum purchase requirements. ECF No. [1] ¶¶ 56-60, 35. Taking these allegations as true for the purposes of this Motion, the Court concludes that the Complaint asserts sufficient facts to support a plausible claim for relief under Plaintiff's theory of promissory estoppel. Therefore, Defendant's Motion is denied as to Count IV.

### E. Count V – Unjust Enrichment

Finally, Defendant contends that Plaintiff's unjust enrichment claim fails as a matter of law because the Complaint fails to allege that Plaintiff delivered anything of value to Defendant that Defendant retained without paying adequate compensation. Likewise, Defendant maintains that the allegation that Defendant unjustly retained the benefit of an exclusive license over MaxKlor Products without paying for this benefit is directly contradicted by the letter of termination that Plaintiff attaches as an exhibit to its Complaint, ECF No. [1-4], which specifically disclaims any ongoing exclusivity. Plaintiff, on the other hand, recounts the allegations in the Complaint in support of its unjust enrichment claim and argues that Defendant's point regarding the attempted, but invalid, early termination of the License Agreement is merely an improper denial of Plaintiff's allegations. Moreover, rather than being a bar to Plaintiff's unjust enrichment claim as Defendant contends, its challenge goes to the amount of damages that Plaintiff can recover on this claim.

18

Like promissory estoppel, unjust enrichment is an equitable doctrine. "Liability in unjust enrichment has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." *Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003). "In Florida, the essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that made it inequitable for him to retain it without paying the value thereof." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009); *William Ryan Homes Fla., Inc. v. Whitney Nat. Bank*, No. 8:12-cv-1575-T-33TGW, 2012 WL 4328769, at *4 (M.D. Fla. Sept. 20, 2012). Oftentimes, however, "[w]hether [a defendant] did or did not receive a direct benefit from [a p]laintiff is a question of fact that cannot be resolved at the motion to dismiss stage in this case." *Sierra Equity Grp., Inc.*, 650 F. Supp. 2d at 1229 (citing *Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (denying motion to dismiss unjust enrichment claim)).

Plaintiff takes the position that its allegations in the Complaint adequately establish an unjust enrichment claim. In particular, the Complaint alleges that Plaintiff provided a benefit to Defendant in the form of an exclusive license to market, sell, advertise, and distribute MaxKlor Products, and Defendant retained this benefit at Plaintiff's expense without fully compensating Plaintiff for the full value of the exclusive license, which in turn has caused Plaintiff to suffer damages. ECF No. [1] ¶¶ 63-65. These allegations adequately state a claim upon which relief can be granted on Plaintiff's unjust enrichment claim. Moreover, Defendant's point that Plaintiff did not confer anything of value by granting Defendant the benefit of exclusivity rights to MaxKlor

Products presents a question of material fact that cannot be resolved on a motion for judgment on the pleadings. Accordingly, Defendant's Motion is denied as to Count V.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Judgment on the Pleadings, **ECF No. [54]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 13, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record