## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-cv-61242-BLOOM/Valle

CONSEAL INTERNATIONAL
INCORPORATED,

    Plaintiff,

v.

NEOGEN CORPORATION,

    Defendant.
_____/

### OMNIBUS ORDER ON *DAUBERT* MOTIONS

**THIS CAUSE** is before the Court upon Plaintiff ConSeal International Inc.'s ("Plaintiff") Motion to Exclude the Expert Reports and Testimony of Defendant's Expert, Philip J. Shechter, ECF No. [74] ("Plaintiff's Motion"), and Defendant Neogen Corporation's ("Defendant") Motion in Limine to Exclude Expert Opinion and Certain Lost Profits Evidence, ECF Nos. [66] & [79][1] ("Defendant's Motion"), (collectively, the "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Plaintiff's Motion is denied, and Defendant's Motion is granted in part.

    **I.   BACKGROUND**

Plaintiff initiated this breach of contract action against Defendant on May 16, 2019. ECF No. [1] ("Complaint"). Plaintiff now seeks to exclude the expert reports and testimony of Defendant's expert, Philip J. Shechter ("Mr. Shechter"), pursuant to *Daubert* because Mr.

---

[1] Defendant initially filed a redacted Motion, ECF No. [66], which it later refiled under seal without redactions, ECF No. [79]. Throughout the remainder of this Omnibus Order, the Court will reference and cite to the sealed and unredacted filings.

Shechter's Report, ECF No. [74-1], lacks reliability and is unhelpful. Plaintiff argues that Mr. Shechter employs the yardstick test for calculating lost profits without considering similar or comparable businesses to Plaintiff's business.[2] Defendant moves to exclude the testimony and opinion of Plaintiff's expert, Marcie Bour ("Ms. Bour"), because Ms. Bour's Report, ECF No. [79-2], employs a methodology for calculating lost profits that is inconsistent with Florida law, her opinions are based upon unreliable information, and multiple errors and miscalculations that render her Report inadmissible.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs.

---

[2] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

An expert in this Circuit may be qualified "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. June 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[3]

When determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation omitted) (quotation marks omitted). To make this determination, the district court examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

generally accepted in the scientific community." *Id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* at 1262 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Thus, these factors are non-exhaustive, and the Eleventh Circuit has emphasized that alternative questions may be more probative in the context of determining reliability. *See id.* Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *Id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326

F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Estate of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

### III. DISCUSSION

Plaintiff and Defendant both seek to exclude the opposing party's expert. As an initial matter, however, the Court notes that this case is set to be tried by bench trial.

> In a bench trial, "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for h[er]self." *U.S. v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005). *See also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Ass Armor, LLC v. Under Armour, Inc.*, No. 15-cv-20853-CIV, 2016 WL 7156092, at *4 (S.D. Fla. Dec. 8, 2016) ("As this is a bench trial without a jury, however, the need for an advance ruling to exclude [expert] testimony is superfluous and unnecessary."). That is because the Court as a fact finder is "presumably competent to disregard what [s]he thinks [s]he should not have heard, or to discount it for practical and sensible reasons." *Ass Armor*, 2016 WL 7156092, at *4 (internal quotation marks and citations omitted). At trial, the Court as fact finder is free to later decide to disregard testimony in whole or in part and/or to decide how much weight to give it. *See Brown*, 415 F.3d at 1270; [*N.W.B. Imps. & Exps. Inc. v. Eiras*, No. 3:03-cv-1071-J-32-MMH, 2005 WL 5960920, at *1 (M.D. Fla. Mar. 22, 2005)]; *Ass Armor*, 2016 WL 7156092, at *4. As another court in this District has explained:

> [T]he danger involved with such expert testimony, namely that the jury will be unduly influenced, is not implicated in a bench trial. The Court is confident that it can discern testimony that seeks to make legal conclusions from testimony that provides the Court with background, context and industry knowledge that are traditionally supplied by experts. . . .
>
> *Apple Glen Inv'rs, L.P. v. Express Scripts, Inc.*, No. 8:14-cv-1527-T-33EAJ, 2015 WL 3721100, at *4 (M.D. Fla. June 15, 2015) (internal quotation marks and citations omitted)).

*GLF Constr. Corp. v. Fedcon Joint Venture*, No. 8:17-cv-1932-T-36AAS, 2019 WL 7423552, at *3 (M.D. Fla. Oct. 15, 2019).

Moreover, "district courts conducting bench trials have substantial flexibility in admitting proffered expert testimony at the front end, and then deciding for themselves during the course of trial whether the evidence meets the requirements" of Rule 702. *Brown*, 415 F.3d at 1243-44 (quoting *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 635 (6th Cir. 2000) (Gilman, J., dissenting)). "Alternatively, in a bench trial, it has been an acceptable method 'to admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled.'" *Nat'l Union Fire Ins. Co. of Pittsburgh PA v. SPX Flow US, LLC*, No. 18-cv-80332, 2019 WL 1227987, at *3 (S.D. Fla. Mar. 14, 2019) (quoting *SmithKline Beecham Corp. v. Apotex*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003)).[4] "The Court can separate and disregard any [improper or speculative] conclusions . . . from testimony which provides context and evaluates the evidence in light of specialized expertise." *GLF Constr. Corp.*, 2019 WL 7423552, at *4 (citing *Apple Glen Inv'rs,*

---

[4] *See also Singh v. Caribbean Airlines Ltd.*, No. 13-20639, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014) ("When ruling on motions *in limine*, a court is forced to determine the admissibility of evidence without the benefit of the context of trial. *See LaConner Assocs. Ltd. Liab. Co. v. Island Tug and Barge Co.*, No. C07-175RSL, 2008 WL 2077948, at *2 (W.D. Wash. May 15, 2008); *Rettiger v. IBP, Inc.*, No. 96-4015-SAC, 1999 WL 318153, at *1 (D. Kan. Jan. 6, 1999) (recognizing that a court is almost always better situated during the actual trial to assess the value and utility of evidence). The more prudent course in a bench trial, therefore, is to resolve all evidentiary doubts in favor of admissibility. *See Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 Civ 3796(PKL), 2004 WL 1970144, at *5 (S.D.N.Y. Sept. 3, 2004).").

*L.P.*, 2015 WL 3721100, at *4). "At trial, the Court as fact finder is free to later decide to disregard testimony in whole or in part and/or to decide how much weight to give it." *Id.* at *3.

Thus, "[w]here a trial judge conducts a bench trial, the judge need not conduct a *Daubert* (or Rule 702) analysis before presentation of the evidence, even though [s]he must determine admissibility at some point." *Travelers Prop. Cas. Co. of Am. v. Barkley*, No. 16-61768-CIV, 2017 WL 4867012, at *1 (S.D. Fla. June 2, 2017) (quoting *Kansas City S. Ry. Co. v. Sny Island Levee Drainage Dist.*, 831 F.3d 892, 900 (7th Cir. 2016)). "In fact, courts are advised to deny motions *in limine* in non-jury cases." *Singh*, 2014 WL 4101544, at *1 (citing 9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2411 (3d ed. 2008)). "Notwithstanding, courts may still go through the individual analyses of the experts or motions, and have granted these motions to strike prior to the bench trial." *Broberg v. Carnival Corp.*, No. 17-cv-21537, 2018 WL 4778457, at *1 (S.D. Fla. June 11, 2018) (citing *Exim Brickell LLC*, 2011 WL 13131317, at *4; *Goldberg v. Paris Hilton Ent., Inc.*, No. 08-22261-CIV, 2009 WL 1393416, at *4 (S.D. Fla. May 18, 2009)), *report and recommendation adopted*, No. 17-21537-CIV, 2018 WL 4776386 (S.D. Fla. July 3, 2018). With these principles in mind, the Court addresses the Motions below.

### A. Plaintiff's Motion

Plaintiff seeks to exclude Mr. Shechter's Report and testimony because his yardstick analysis utilizes Integra data on chemical companies for the comparison businesses, which Plaintiff contends is too speculative to adequately perform a comparative analysis. However, as Defendant notes, Plaintiff does not dispute Mr. Shechter's use of the yardstick test to compute lost profits. Rather, Plaintiff takes issue with the speculative nature of the Integra companies that Mr. Shechter relies upon as comparisons and disputes that the comparison businesses are sufficiently similar to Plaintiff's business as required for the yardstick method.

> The yardstick test "consists of a study of the profits of business operations that are closely comparable to the plaintiff's." [*G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1538 (11th Cir. 1985); *River Bridge Corp. v. Am. Somax Ventures*, 18 So. 3d 648, 650 (Fla. 4th DCA 2009)] (noting that the yardstick test "compares the profits of businesses that are closely comparable to the plaintiff's"). "Although allowances can be made for differences between the firms, the business used as a standard must be as nearly identical to the plaintiff's as possible." *G.M. Brod & Co.*, 759 F.3d at 1538-39. The assumptions used to support the conclusions regarding lost profits must "be reasonably certain, not mere best case scenario predictions." *Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.*, 254 F. Supp. 2d 1239, 1247 (M.D. Fla. 2003).

*BGW Design Ltd., Inc. v. Serv. Am. Corp.*, No. 10-20730-CIV, 2011 WL 13172487, at *2 (S.D. Fla. Nov. 30, 2011).

The record reflects Mr. Shechter testified that, based upon the information available to him about Plaintiff and its business, the Integra data on chemical manufacturers was a reliable industry tool to assess business valuation of companies within specific sectors and that this data allowed him to determine average costs and expenses of companies in the same industry in order to perform a benchmark test of Plaintiff's lost MaxKlor profits. *See* ECF No. [74-1] at 6; ECF No. [87-2] at 62:7-63:18, 71:11-14.

At this stage, after a review of Mr. Shechter's Report and his deposition transcript, the Court finds that this methodology is sufficient for present purposes, especially given the relaxed *Daubert* inquiry required for bench trials "because the Court as a fact finder is 'presumably competent to disregard what [s]he thinks [s]he should not have heard, or to discount it for practical and sensible reasons.'" *GLF Constr. Corp.*, 2019 WL 7423552, at *3 (quoting *Ass Armor*, 2016 WL 7156092, at *4). Thus, to the extent Plaintiff wishes to challenge Mr. Shechter's use of Integra data in his Report, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341. Likewise, with regard to Mr. Shechter's allegedly speculative expert testimony, such testimony can be challenged through proper

8

objections during trial, rather than precluding any potentially improper testimony in the abstract. As such, Plaintiff's Motion is denied.

### B. Defendant's Motion

Defendant argues that Ms. Bour's Report is methodologically unsound because it computes Plaintiff's gross lost profits, rather than the net lost profits required under Florida law, and fails to account for fixed costs and overhead relating to Plaintiff's operations and the production of MaxKlor. Further, Defendant contends that Ms. Bour's Report relies on flawed data and assumptions and contains errors and miscalculations that render her Report unreliable. In response, Plaintiff argues that Defendant takes issue with the amount of lost profits Ms. Bour reported and whether certain costs should have been included in her calculations, not with the methodology of calculating the lost profits.

Defendant primarily takes issue with Ms. Bour's Report because it contends that the Report calculates gross profits, rather than net profits, which is at odds with Florida law. Indeed, the Court agrees with Defendant that net lost profits are the proper damages calculation under Florida law. "Requiring a deduction of a share of fixed costs related to the performance of a contract allows for a true measurement of the amount the non-breaching party would have earned on the contract had there been no breach, which is the proper measure of damages." *RKR Motors, Inc. v. Associated Unif. Rental & Linen Supply, Inc.*, 995 So. 2d 588, 593 (Fla. 3d DCA 2008); *see also Indian River Colony Club, Inc. v. Schopke Constr. & Eng'g, Inc.*, 592 So. 2d 1185, 1187 (Fla. 5th DCA 1992) (explaining that, in proving lost profits, the non-breaching party must calculate the total costs and expenses necessary to perform the contract, including supervisory services attributable to performing the contract and overhead expenses, and then deduct that sum from the balance owing on the contract price); *Physicians Reference Lab., Inc. v. Daniel Seckinger, M.D. & Assocs., P.A.*,

501 So. 2d 107, 109 (Fla. 3d DCA 1987) (providing that lost profits are determined by subtracting the costs of performance, including fixed and variable costs, from the contract price). Critically, as one Florida court has explained, if a company performs 100 jobs per year, "and its fixed costs do not increase after the first fifty, it does not follow that [it] can recover greater lost profits for the seventy-fifth [job] than the twenty-fifth [job]. [Rather, Florida] case law requires that these expenses be allocated across the board." *Boca Developers, Inc. v. Fine Decorators, Inc.*, 862 So. 2d 803, 805 (Fla. 4th DCA 2003); *id.* at 804 (requiring that the lost profits calculation "include ordinary overhead such as salaries of employees, rent and insurance").

Thus, to the extent that Ms. Bour's Report fails to include, among others, certain supervisory salaries or fixed costs, administrative expenses, and overhead expenses that contributed to the production of MaxKlor Products,[5] such opinions are insufficient. However, exclusion of Ms. Bour's opinions entirely is not warranted here. Instead, Ms. Bour is limited to offering her testimony and expert opinions on Plaintiff's net lost profits, which, under Florida law, include fixed costs and overhead expenses.

Defendant's remaining challenges, however—namely, that Ms. Bour's Report relies on flawed data and assumptions and contains errors and miscalculations that render her Report unreliable—are all challenges to the weight and credibility of Ms. Bour's opinions and aremore appropriately addressed through vigorous cross examination. *See Vision I Homeowners Ass'n, Inc.*, 674 F. Supp. 2d at 1325 (quoting *Jones*, 861 F.2d at 662). Accordingly, Defendant's Motion is

---

[5] *See, e.g.*, ECF No. [79-3] 59:10-60:1 (testimony that the Report did not include general overhead expenses, fixed costs other than rent, and costs for salaried employees); ECF No. [79-4] at 11:14-13:3 (testimony that officer compensation—such as the compensation paid to Plaintiff's Chief Operating Officer, Donna Gilmore, who was directly involved in the production of MaxKlor under the License Agreement—and general manufacturing overhead at the facility where MaxKlor was produced were not included in the cost estimation).

denied in this regard. Where appropriate, Defendant may re-articulate any objections or proper challenges to the expert testimony presented during trial.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion, **ECF No. [74]**, is **DENIED**.
2. Defendant's Motion, **ECF Nos. [66] & [79]**, is **GRANTED in part and DENIED in part** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 29, 2020.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record